BISER, *Appellant*, v. DAMERON.

The evidence in this case examined and the action of the trial court approved, in dismissing plaintiff's bill, which sought to compel defendant to convey to a corporation formed to buy in lands at tax sales, lands alleged to have been bought for the corporation.

*Appeal from Shannon Circuit Court.*—Hon. J. R. WOODSIDE, Judge.

AFFIRMED.

*A. & J. F. Lee* for appellant.

*Seay & Woodside* for respondent.

BLACK, J.—The plaintiff brings this suit making the Shannon Land and Stock Growers' Association, and the stockholders thereof, other than himself, defendants.

The purpose of the suit is to require the defendant, Logan D. Dameron, to convey to the corporation some one hundred thousand acres of land in Shannon county. In 1880, the plaintiff, Biser, and Dameron, entered into a scheme having in view the purchase of lands in that county, under tax judgments to be obtained under the tax law of 1877. Dameron was to furnish the money and Biser was to do the work. The latter claims that he was to have a fourth of all the lands so purchased, and the former that Biser was to have only a fourth of the profits. At all events, after the parties had made their negotiations, at St. Louis, Biser made contracts with the officers in Shannon county, that is to say, with a justice of the peace, the constable, attorney for the collection of taxes, clerk of the circuit court, and sheriff, by which they sold their fees, thereafter to be earned, at a considerable discount. The publisher in like manner sold his fees for publication and notice of sale, for two dollars in each case, when the taxable costs therefor were about thirty dollars, the purchasers, however, agreed to deliver to the publisher the necessary orders of publication and notices of sale printed in form suitable as a supplement to the publisher's newspaper. These agreements were then assigned to Dameron. Pursuant to the agreements, some four hundred and fifty suits were brought before the justice of the peace and prosecuted to judgment and a sale of the lands. These fees amounted to some six thousand dollars, were paid by Dameron, and the lands, aggregating one hundred thousand acres, were purchased in the name of the Shannon Land and Stock Growers' Association, in November, 1830, at the amount of the taxable costs in the respective cases, so that not a cent of revenue was raised from the sale of this vast body of lands. Biser and Dameron had, just previous to the last mentioned date, organized this corporation as a medium through which these transactions might be completed. These contracts, with the officers and the publisher, pro-

vided for four or five hundred suits with a stipulation that the number might be increased to one thousand if the purchasers desired. Besides these suits before the justice, the officers subsequently commenced some four hundred more suits in the circuit court, which were prosecuted to judgment and sale, and the lands again, aggregating one hundred thousand acres, were sold, and Dameron purchased all of them in his own name, in no case paying more than the taxable costs. These second sales occurred in 1881 and 1882, and are known as the May sales of 1881, and the lands then purchased are those here in question. The plaintiff contends that Dameron purchased these lands under the optional provision of the contracts with the officers and publishers, and with the means of the corporation.

The testimony of Biser and Dameron is contradictory on many material questions, as indeed might be expected, considering the character of the transactions in which they were engaged. It is quite clear that the capital stock of the corporation was twelve thousand dollars, one-half paid up; that Dameron furnished this six thousand dollars, and that it was consumed in the purchase of the first batch of fees. There is no satisfactory evidence that the money used in making the purchases at the second sales was the money of the corporation; on the contrary, we can come to no other conclusion than this, that the money was furnished by Dameron, and that he purchased for himself, and on his own account. It would seem Dameron declined to furnish money to purchase any more fees after the first batch, but in a conversation with Biser expressed a willingness to purchase the printer's fees for the second lot of suits on his own account, and did so do in August, 1880. Biser then had authority from the publisher to sell his fees, or rather his right to make the publications and notices of sale, though Dameron negotiated with the publisher direct, and not through Biser. The evidence of the officers'

shows that they regarded the contracts as exhausted by the first lot of suits. The second lot of suits were brought on their own motion, Biser and Dameron having failed to avail themselves of the option. Indeed, it is pretty conclusively shown that Biser himself took a second contract from the officers for the sale of their fees, and was endeavoring to negotiate this contract, but failed so to do. Nothing was done with respect to the fees of the officers, as to the second lot of suits, until the first day on which the lands embraced therein were sold, when Dameron made an arrangement with them, paying one dollar more in each case than had been paid for the first lot. The fact that Dameron put these lands out of his hands, though he says not to avoid any claim of the corporation or Biser, and no protection is now claimed on that ground, is still a circumstance against him. The evidence, as a whole, and there is much of it, tends strongly to show that neither Biser nor the corporation had any right to or claims upon these lands, purchased at the second sales. The circuit court seems to have so found, and dismissed the bill, and we see no reason why that judgment dismissing the bill should be disturbed.

It may be added that the parties on both sides of this suit, by their pleadings and in the argument at the bar of this court, have assumed and presented the case upon the theory that the transactions resulting in the sale and purchase of the lands were entirely legitimate. We are not to be understood as giving any sanction or acquiescence to that assumption or theory of those transactions.

Affirmed. All concur.